UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMAL SHARIF f/k/a DONALD NOBLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15 C 10795 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| | ) | |
| ALMA MARTIJA, M.D., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

The Court grants in part and denies in part Defendant Dr. Alma Martija's motions *in limine* [185]. See Statement for further details.

## STATEMENT

**1.    Motion to preclude evidence regarding Defendant's failure to properly treat or diagnose Plaintiff's prostate cancer**

Dr. Martija asks the Court to preclude evidence regarding her treatment and diagnosis of Sharif's prostate cancer as irrelevant and prejudicial because purportedly at summary judgment, the Court narrowed Sharif's claim against her to deliberate indifference to his benign prostatic hyperplasia ("BPH") and prostatitis. Sharif objects, arguing that the Court did not narrow his claims as Dr. Martija suggests. However, the parties misstate the Court's summary judgment opinion. Sharif does not bring a deliberate indifference claim based on the treatment of his prostate cancer; instead, his complaint alleges Dr. Martija was deliberately indifferent to his prostatitis. Doc. 23 ¶ 57. Therefore, the Court held at summary judgment that a reasonable jury could conclude that Dr. Martija exhibited a deliberate indifference to Sharif's BPH and prostatitis. Doc. 163 at 23. Further, Sharif does not object to Dr. Martija's motion *in limine* number 10, which asks the Court to preclude evidence or argument regarding Sharif's medical treatment after Dr. Martija stopped treating him in November 2015. Sharif did not see a specialist until December 2016 and a biopsy did not reveal he had prostate cancer until March 2017. The Court agrees that evidence regarding Dr. Martija's failure to refer Sharif to a specialist after his BPH and prostatitis symptoms failed to improve is relevant. However, Sharif fails to explain how or why he intends to introduce evidence regarding the failure to treat or diagnose his prostate cancer. The Court, therefore, reserves ruling on Dr. Martija's motion *in limine* number 1. Sharif should come prepared to address why evidence regarding Dr. Martija's failure to properly treat or diagnose Sharif's prostate cancer is relevant to his claim that Dr. Martija was deliberately indifferent to his BPH and prostatitis.

2. **Motion to bar Plaintiff's retained expert from opining on the standard of care, causation, or the ultimate issue**

Dr. Martija asks the Court to preclude Sharif's retained expert, Dr. Ralph Duncan, from opining on the standard of care, causation, and the ultimate outcome of the case (whether Dr. Martija was deliberately indifferent). Sharif does not object to the Court barring Dr. Duncan from expressing an opinion as to the ultimate issue, so the Court grants this portion of Dr. Martija's motion *in limine* number 2. However, Sharif argues that the Court should allow Dr. Dunkin to testify to the appropriate standard of care and causation.

The Court is responsible for determining the admissibility of Dr. Duncan's opinions pursuant to the Federal Rule of Evidence 702/*Daubert* framework. *Timm v. Goodyear Dunlop Tires N. Am., Ltd.*, 932 F.3d 986, 993 (7th Cir. 2019). To admit expert testimony under this framework, the Court must determine that (1) the witness is qualified, (2) the expert's methodology is reliable, and (3) the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). "[Expert] testimony is permitted if the witness is 'an expert by knowledge, skill, experience, training, or education,' and her opinion is 'the product of reliable principles and methods' that have been reliably applied to the facts of the case." *Hall v. Flannery*, 840 F.3d 922, 926 (7th Cir. 2016) (quoting Fed. R. Evid. 702). The inquiry "is a flexible one," however. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594 (1993). "Determinations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010). The proponent of the testimony bears the burden of proving that the proffered testimony meets these requirements, and the Seventh Circuit grants the district court "wide latitude in performing its gate-keeping function." *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011).

a. **Standard of Care**

Dr. Martija argues that because Dr. Duncan is a urologist, he is not qualified to testify regarding the standard of care applicable to her, a primary care physician in a prison. In response, Sharif states that in effect, Dr. Martija is arguing that Dr. Duncan is too qualified and that Sharif is unaware of any case law that prohibits a specialist from testifying to general medical knowledge or standards. "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton*, 593 F.3d at 616 (citation omitted). Dr. Duncan is a board-certified urologist who completed his undergraduate degree at Princeton University and his medical degree at the Medical College of Virginia. He has been practicing in the field of urology for forty-seven years; Dr. Duncan is currently a solo practitioner at Urology Associates of York in Pennsylvania but was previously the Chief of Urology at York Hospital and at the Naval Regional Medical Center. Dr. Duncan completed a urological oncology fellowship as part of his training and regularly treats patients with prostate cancer and other prostate conditions, including BPH and prostatitis. Dr. Duncan has also "moonlighted in private hospital ERs" and practiced "some family medicine" in the Navy. Doc. 185-2 at 10. Moreover, he has testified as an expert in hundreds of cases regarding

the appropriate standard of care for treating urological issues, including the standard of care a primary care physician should apply when treating them.

In his expert report, Dr. Duncan opines that:

> The standard of care for this patient at the time of his treatment included the following: Hematuria always requires complete, timely evaluation but this was not performed, which is a deviation of the standard of care. Abnormal PSA always requires complete, timely evaluation, including prostate biopsy, but this was not performed, which is a deviation of the standard of care. LUTS with bladder outlet obstruction always requires complete, timely evaluation, which was not performed in this case, which is a deviation of the standard of care. DRE is always required regularly, on a timely basis, which was not performed in this case, which is a deviation of the standard of care.

Doc. 185-1 at 1. Dr. Duncan testified that, based on his "education, training, and experience" and the medical records provided to him, Doc. 185-2 at 23, a doctor who "has a patient with elevated PSA historically" and does not order a biopsy is "deficient," *id.* at 27.

"Courts often find that a physician in general practice is competent to testify about problems that a medical specialist typically treats." *Gayton*, 593 F.3d at 617. Yet, Dr. Martija argues that a specialist is not competent to testify regarding issues a generalist typically treats. However, "[t]he question we must ask is not whether an expert witness is qualified in general, but whether his 'qualifications provide a foundation for [him] to answer a specific question.'" *Id.* Just because Dr. Duncan is not a primary care physician in a prison does not prevent him from testifying about the standard of care one should apply to urological issues, which are his specialty. *See Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000) ("Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness."). Dr. Duncan's standard of care opinion simply asserts that certain urological symptoms "require complete, timely evaluation." Doc. 185-1 at 1. His medical education, training, and extensive experience in urology certainly provide him with a foundation to answer the specific question of the type of care certain urological symptoms require. *See Heard v. Ill. Dep't of Corr.*, No. 06 C 0644, 2012 WL 2524748, at *2 (N.D. Ill. June 29, 2012) (rejecting argument that because physician was a specialist, he was not qualified to testify about certain problems that a generalist treats and finding specialist qualified based on his education and experience with the specific problem). Further, Dr. Duncan testified that he has some experience specifically in general medicine in an emergency room setting and in the Navy. The Court thus finds that he is adequately qualified to testify to the applicable standard of care in this case.

Finally, the Court notes that, "[t]he fact that an expert may not be a specialist in the field that concerns her opinion typically goes to the weight to be placed on that opinion, not its admissibility." *Hall*, 840 F.3d at 929; *see Prayitno v. Nextep Funding LLC*, No. 17 C 4310, 2019 WL 6497374, at *6 (N.D. Ill. Dec. 3, 2019) ("[T]o the extent that plaintiff argues that it is not

3

narrowly specialized enough in the relevant field to point to the correct conclusion, the way to test his expertise is not at the threshold in a *Daubert* motion, but at trial through opposing evidence or cross-examination."). Thus, to the extent Dr. Martija argues that Dr. Duncan is not an expert in prison primary care and therefore his opinion regarding the applicable standard of care for Sharif's prostate symptoms is inaccurate, she can make those arguments at trial. Accordingly, the Court denies this portion of Dr. Martija's motion *in limine* number 2 and will permit Dr. Duncan to testify as to the appropriate standard of care.

          **b.**     **Causation**

Dr. Martija also challenges Dr. Duncan's causation opinion. Dr. Duncan's report states: "Because of the deviations of the standard of care and the satisfaction of the definition of deliberate indifference for this patient at the time of his treatment, a timely diagnosis of carcinoma of the prostate was not achieved, which will result more likely than not in metastatic disease and early death, which would have been preventable otherwise." Doc. 185-1 at 2. Dr. Martija argues that this opinion is not based on any scientific methodology and is therefore unreliable. Sharif argues that Dr. Duncan's almost fifty years of experience is a proper scientific basis for his opinion that the delayed diagnosis of Sharif's prostate cancer will shorten his life expectancy. However, as previously discussed, Sharif does not bring a deliberate indifference claim relating to Dr. Martija's failure to properly treat or diagnose his prostate cancer. Therefore, the Court fails to see how this testimony will assist the trier of fact in understanding the evidence or determining a fact in issue. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 721 (7th Cir. 2000) ("[I]n order for an expert's testimony to qualify as 'relevant' under Rule 702 it must assist the jury in determining *any* fact at issue in the case."). Accordingly, the Court reserves ruling on this portion of Dr. Martija's motion *in limine* number 2. Sharif should come prepared to address why Dr. Duncan's causation opinion is relevant to his claim that Dr. Martija was deliberately indifferent to his BPH and prostatitis.

      **3.**     **Motion to preclude Plaintiff from testifying as an expert witness**

Dr. Martija asks that the Court preclude Sharif from testifying regarding causation, diagnosis, or appropriate treatment of his alleged medical condition. Sharif does not object to Dr. Martija's motion, and so the Court grants Dr. Martija's motion *in limine* number 3.

      **4.**     **Motion to bar evidence that Defendant had a financial incentive**

Dr. Martija asks that the Court bar evidence or comments that insinuate that Dr. Martija had a financial incentive to delay or not provide medical care of treatment to Sharif. Sharif does not object to Dr. Martija's motion, and so the Court grants Dr. Martija's motion *in limine* number 4.

      **5.**     **Motion to preclude reference to other lawsuits, complaints, and grievances against Defendant**

Dr. Martija asks that the Court preclude evidence or reference to: any complaints, grievances, disciplinary actions, or lawsuits filed or brought against Dr. Martija; the number of

times parties have sued or deposed Dr. Martija; and any prior discipline or punishment of Dr. Martija. Sharif does not object to Dr. Martija's motion, and so the Court grants Dr. Martija's motion *in limine* number 5.

6. **Motion to preclude reference that Defendant is insured against liability**

Dr. Martija asks that the Court preclude any reference to liability insurance with respect to Dr. Martija pursuant to Federal Rule of Evidence 411. Sharif does not object to Dr. Martija's motion, and so the Court grants Dr. Martija's motion *in limine* number 6.

7. **Motion regarding the "Golden Rule"**

Dr. Martija asks that the Court preclude any suggestion that the jurors place themselves in Sharif's position or consider how much money they would accept in exchange for incurring the same injury. Dr. Martija also asks that the Court preclude any comment that Sharif has had to wait a long time for "his day in court" or related to injuries sustained by other persons. Sharif does not object to Dr. Martija's motion, and so the Court grants Dr. Martija's motion *in limine* number 7.

8. **Motion to preclude reference to status of dismissed Defendants**

Dr. Martija asks that the Court preclude reference to or evidence regarding the dismissed Defendants' status as dismissed parties in this case as irrelevant. Sharif does not object to Dr. Martija's motion, and so the Court grants Dr. Martija's motion *in limine* number 8.

9. **Motion to preclude evidence or argument regarding the medical treatment provided to other inmates**

Dr. Martija asks that the Court preclude evidence or reference to the medical treatment provided to any other inmate as irrelevant. Sharif does not object to Dr. Martija's motion, and so the Court grants Dr. Martija's motion *in limine* number 9.

10. **Motion to preclude evidence or argument that Plaintiff's medical treatment was inadequate after Defendant stopped treating him**

Dr. Martija asks that the Court preclude evidence or argument that the medical treatment Sharif received after Dr. Martija stopped treating him in November 2015 was inadequate, negligent, or constituted deliberate indifference. Sharif does not object to Dr. Martija's motion, and so the Court grants Dr. Martija's motion *in limine* number 10.

Date: November 22, 2021                                          /s/ Sara L. Ellis_____